United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>WEST BAY SANITARY DISTRICT,<br><br>　　　　Defendant.<br>_____/ | Case No. C 09-5676 EMC<br><br>**ORDER DENYING PLAINTIFF'S AND DEFENDANT'S MOTIONS FOR JUDICIAL NOTICE; GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS; AND DENYING DEFENDANT'S MOTION FOR PROTECTIVE ORDER**<br><br>**(Docket Nos. 39, 43, 44, 59)** |

　　　　Before the Court is Defendant West Bay Sanitary District's ("Defendant" or "West Bay") Rule 12(c) Motion for Judgment on the Pleadings/Rule 56 Motion for Partial Summary Judgment. Also before the Court are Defendant's Motion for a Protective Order and the parties' Motions for Judicial Notice. Defendant seeks judgment on portions of the Clean Water Act claims raised in Count I as well as the state law claims asserted in Count III. Defendant alternatively requests that the decline to exercise supplemental jurisdiction over the state law claims raised in Count III.

　　　　On December 1, 2010, the Court expedited briefing and advanced the hearing date for the pending motion based on Defendant's assertion that a favorable ruling would obviate the need for a considerable amount of discovery. After considering the parties' briefs, the arguments raised at the December 22, 2010 hearing, and the entire record of this case, the Court will **DENY** each party's Motion for Judicial Notice, **GRANT-IN-PART and DENY-IN-PART** Defendant's Rule 12(c)/Rule 56 motion, and **DENY** Defendant's Motion for a Protective Order for the reasons set forth herein.

## I. BACKGROUND

Plaintiff San Francisco Baykeeper is a non-profit corporation aiming to "protect and enhance the water quality of the San Francisco Bay-Delta Estuary and its tributaries . . . ." Compl. ¶ 12. Its members use the San Francisco Bay, as well as nearby lakes and creeks, "to sail, swim, windsurf, picnic, hike, and/or for aesthetic enjoyment." Compl. ¶ 14. Defendant West Bay Sanitary District ("Defendant" or "West Bay") is the political entity that owns and operates the sewage collection system (the "Collection System") serving some 55,000 people in the City of Menlo Park and neighboring cities, towns, and counties. Compl. & Answer ¶¶ 21-23. The Collection System is made up of pipes and manmade conveyances amounting to some 210 miles of sewer line. Compl. & Answer ¶¶ 24-25. The Collection System conveys sewage to the Menlo Park Pumping Station and from there to the South Bayside System Authority Wastewater Treatment Plant, which is jointly owned and operated by the District and three other municipalities. Compl. & Answer ¶¶ 28, 29. Plaintiff also alleges that the Collection System runs through watersheds (including creeks, lakes, and channels) that drain into the Bay and its tributaries. Compl. ¶ 43. The Collection System has overflowed and discharged raw or partially treated sewage at least 162 times since September 28, 2004. Compl. ¶¶ 34, 101; Answer ¶ 34. Plaintiff alleges that many of these sanitary sewer overflows ("SSOs") flow into surface waters and Municipal Separate Storm Sewer Systems ("MS4s") owned and operated not by West Bay but by nearby municipalities. Compl. ¶ 35. According to Plaintiff, these MS4s discharge into San Francisco Bay and its tributaries. Compl. ¶ 44.

Plaintiff alleges that SSOs from the Collection System result in the discharge of pollutants into "waters of the United States" directly, as well as indirectly via the MS4s. Count I asserts that Defendant is therefore in violation of Clean Water Act § 301(a) for discharging pollutants from a "point source" into waters of the United States without a NPDES permit. Count III alleges West Bay violated several municipal ordinances and codes; such alleged violations do not depend on whether pollutants reached waters of the United States. Plaintiff seeks an injunction enjoining the District from discharging SSOs without a National Pollutant Discharge Elimination System ("NPDES") permit, a writ of mandate directing the District to implement a program ensuring

1 compliance with each statute and local ordinance cited in the Complaint, and an award of civil
2 penalties and costs.

## II. LEGAL STANDARDS

### A. Rule 12(c)

In a motion for judgment on the pleadings under Rule 12(c), as with Rule 12(b)(6), the question is whether the complaint contains sufficient factual allegations which, taken as true, state a facially plausible claim for relief. *See, e.g.*, *Johnson v. Rowley*, 569 F.3d 40, 44 (2d Cir. 2009) (stating that, "[t]o survive a Rule 12(c) motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face") (internal quotation marks omitted); *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008) (noting that "[a] motion for judgment on the pleadings is treated much like a Rule 12(b)(6) motion to dismiss . . . to survive a Rule 12(b)(6) motion (and, by extension, a Rule 12(c) motion) a complaint must contain factual allegations that raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true") (internal quotation marks omitted).

### B. Rule 56

Under Federal Rule of Civil Procedure 56, summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252.

At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255. Where the nonmoving party has the ultimate burden of proof, the party moving for summary judgment may prevail on such a motion simply by pointing to the nonmoving party's failure "to

3

make a showing sufficient to establish the existence of an element essential to [the plaintiff's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

C. Supplemental Jurisdiction

Where federal jurisdiction obtains, the district court may retain supplemental jurisdiction over related state law claims that are part of the same case or controversy. 28 U.S.C. § 1367(a). However, a district court may decline to exercise jurisdiction over a related claim grounded in state law where "(1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *Id.* at § 1367(c). Supplemental jurisdiction may be declined if the retention of the state claims "requires the expenditure of substantial additional judicial time and effort." *Executive Software North America, Inc. v. U.S. Dist. Court for Cent. Dist. of California*, 24 F.3d 1545, 1548 (9th Cir. 1994); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 [108 S.Ct. 614, 98 L.Ed.2d 720] (1988); *see also Government Employees Ins. Co. v. Dizol* 133 F.3d 1220, 1224 (9th Cir. 1998).

### III.   DISCUSSION

A. Judicial Notice

Each party has requested that the Court take judicial notice of submitted exhibits to aid in its consideration of the pending motion. Some exhibits are simply copies of cited authorities, (i.e., judicial opinions, regulations, water discharge requirements, etc.), which the Court accepts for consideration. The remaining documents include plans, permits, website printouts, etc.

Rule 201 provides an avenue for the Court to take judicial notice of reasonably indisputable adjudicative facts at any time. Fed. R. Evid. 201. Although the Court may consider certain documents accompanying the pleadings without converting the motion into a summary judgment motion, *e.g.*, because they constitute "matters of public record," the Court declines to do so here. Although the existence of the submitted exhibits may be judicially noticed, their content may not be capable of accurate and ready determination at this juncture; moreover, the parties have not pointed to specific, indisputable facts in their requests. The Court therefore denies each party's blanket

request for judicial notice of their exhibits. Since there have been no evidentiary objections, however, the Court considers the exhibits as admissible evidence in its analysis under Rule 56.

B.      Count I: The Clean Water Act

The Clean Water Act, 33 U.S.C. §§ 1251-1387, is intended to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). Section 301(a) prohibits "the discharge of any pollutant" unless that discharge complies with other specified provisions of the Act, including § 402. 33 U.S.C. § 1311(a). The term "discharge of pollutant" means "any addition of any pollutant to navigable waters from any point source." 33 U.S.C.A. § 1362(12). In relevant part, 33 U.S.C.A. § 1362 also states:

> (6) The term "pollutant" means dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural water. . . .
>
> (7) The term "navigable waters" means the waters of the United States, including the territorial seas. . . . .
> (14) The term "point source" means any discernible, confined and discrete conveyance.
> 33 U.S.C.A. § 1362. EPA regulations further define "waters of the United States" but include an exception: "Waste treatment systems, including treatment ponds or lagoons . . . are not waters of the United States."

40 C.F.R. § 122.2.

CWA § 402 provides for the issuance of NPDES permits that allow the holder to discharge pollutants notwithstanding the general prohibition imposed by § 301(a). 33 U.S.C. § 1342(a). NPDES permits may be issued by EPA or by state agencies that have been duly authorized by EPA. 33 U.S.C. § 1342(a)-(b). In California, the NPDES program is administered by the State Water Resources Control Board (which is divided into Regional Water Quality Control Boards for purposes of NPDES permitting). EPA is also required to regulate stormwater discharges "to protect water quality." 33 U.S.C. § 402(p)(6). EPA's stormwater discharge regulations, 40 C.F.R. § 122.26, define a Municipal Separate Storm Sewer ("MS4") as:

> a conveyance or system of conveyances (including roads with drainage systems, municipal streets, catch basins, curbs, gutters, ditches, man-made channels, or storm drains):

> (I) Owned or operated by a State, city, town, borough, county, parish, district, association, or other public body (created by or pursuant to State law) having jurisdiction over disposal of sewage, industrial wastes, storm water, or other wastes, including special districts under State law such as a sewer district, flood control district or drainage district, or similar entity, or an Indian tribe or an authorized Indian tribal organization, or a designated and approved management agency under section 208 of the CWA that discharges to waters of the United States;
>
> (ii) Designed or used for collecting or conveying storm water;
>
> (iii) Which is not a combined sewer; and
>
> (iv) Which is not part of a Publicly Owned Treatment Works (POTW) as defined at 40 CFR 122.2.

40 C.F.R. § 122.26 (2010).

In sum, to establish liability for a violation of CWA § 301, Plaintiff must demonstrate that Defendant is responsible for the 1) discharge 2) of pollutants 3) to "waters of the United States" 4) from point sources 5) without a proper permit. *Comm. to Save Mokelumne River v. East Bay Mun. Dist.*, 13 F.3d 305, 308-09 (9th Cir. 1993); *Waste Action Proj. v. Clark Cnty.*, 45 F. Supp. 2d 1049, 1055 (W.D. Wash. 1999).

Defendant's motion targets the third element: "Alleged discharges to the MS4s only are not violations of federal law, because the jurisdiction of the Clean Water Act extends only to waters of the United States. . . . Storm drains are part of a municipality's waste treatment system for storm water and are not considered 'waters of the United States,' but instead are considered to be 'point sources' discharging into 'waters of the United States.'"[1] Def.'s. Mot. at 6. At the December 22, 2010 hearing, Defendant clarified that its argument is not based on a blanket "waste treatment exception" to the definition of navigable waters. Rather, Defendant argues that the implementation of policies aimed at stopping the flow of sewage through MS4s prevented SSO pollutants from reaching "waters of the United States" via the MS4s, and that SSO pollutants reaching MS4s but which did not reach the waters of the United States are not actionable under the CWA.

---

[1] It is undisputed that the Collection System as well as the MS4s constitute "point sources" under the CWA. Answer ¶¶ 25, 37.

6

However, it is undisputed that Plaintiff's claim under the CWA encompasses only SSO discharges that actually reach "waters of the United States." At the hearing, Plaintiff agreed that any SSO discharges into MS4s that did not go on to reach "waters of the United States" would be outside the scope of this lawsuit, though Plaintiff did not concede that such discharges could never be actionable as a matter of law. Defendant does not contend nor has it proffered any evidence that none of the SSOs reached the waters of the United States. Thus, there is no basis for granting summary adjudication on the first claim. Defendant's motion as to this claim is therefore denied.

C.   Count III: Petition for a Writ of Mandate Compelling Compliance with Local Laws

Plaintiff alleges several violations of municipal codes and local ordinances, and asks the Court to issue a write of mandate compelling West Bay to comply with each one. Defendant as well as the California Association of Sanitary Agencies ("CASA"), who submitted an amicus letter, raise several arguments as to why Plaintiff's writ petition is inappropriate here. Alternatively, Defendant and CASA ask that the Court decline to exercise supplemental jurisdiction over the local law claims alleged in Count III in light of the novel issues raised therein.

A writ of mandate "may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the party is unlawfully precluded by such inferior tribunal, corporation, board, or person." Cal. Code Civ. P. § 1085(a). "To have standing to seek a writ of mandate, a party must be 'beneficially interested'(Code Civ. Proc., § 1086), i.e., have some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large." *Associated Builders & Contractors, Inc. v. San Francisco Airports Com.*, 21 Cal. 4th 352, 361-362 (Cal. 1999) (citation and quotation marks omitted). *See also Major v. Silna*, 134 Cal. App. 4th 1485, 1498-1499 (Cal. App. 2d Dist. 2005) (California Courts have "generally permitted a citizen to enjoin violations of local ordinances only when the violations work a special injury on the citizen."); *Rancho Murieta Airport, Inc. v. County of Sacramento*, 142 Cal. App. 4th 323, 326 (Cal. App. 3d Dist. 2006) ("There are only two requirements for the issuance of the writ: a respondent's clear, present, and usually ministerial duty

7

1 and a petitioner's clear, present, and beneficial right to performance of the duty.").

2 Defendant argues that Plaintiff cannot have standing to enforce municipal codes and county
3 ordinances absent an express private right of action. This argument is not consistent with case law.
4 For example, in *Rancho Murieta Airport*, described by Plaintiff as its strongest authority, the airport
5 was able to enforce both state and local statutes regulating the height of trees adjacent to an airport
6 via a writ of mandate despite the absence of an express private right of action. It is true that Plaintiff
7 will have to demonstrate a special interest or injury to have standing under the mandamus statute,
8 but none of Defendant's authorities show that it is impossible *as a matter of law* for an association to
9 meet that burden. Nor has Defendant shown that there is no genuine issue as to whether Plaintiff
10 can show that its members have a beneficial interest sufficient to establish standing. On the other
11 hand, a relevant question not addressed by the parties is whether an association whose members are
12 citizens of various local jurisdictions may have standing to compel enforcement of a local ordinance
13 via mandamus where the injury suffered occurs outside the jurisdiction responsible for the ordinance
14 or where there is no clearly alleged injury for each SSO absent the pollutant reaching the waters of
15 the United States used by Plaintiff's members.

16 West Bay and CASA also argue that generally applicable obligations or prohibitions under
17 municipal codes and ordinances are not enforceable against West Bay by traditional mandamus
18 because they do not arise from its "office, trust, or station" as a sanitary district. Def.'s Mot. at 10.
19 Relying primarily on *Rancho Murieta Airport*, Plaintiff counters that "courts have consistently held
20 that section 1085 extends to all duties created by law even when those laws apply generally." Pl.'s
21 Opp'n at 17.

22 In *Rancho Murieta Airport*, over sixty trees on the county's property, which neighbored the
23 airport, exceeded height limits prescribed by a state statute and local ordinance. 142 Cal. App. 4th
24 323, 327 (2006). The county refused to cut the trees until the airport's permit was suspended, at
25 which point it cut trees near the runway the but refused to trim or remove any others. The airport
26 ultimately sued and obtained a writ of mandate from the trial court compelling the county to cut the
27 trees. On appeal, the county argued, *inter alia*, that is not subject to the writ (a) because the decision
28 to cut the trees is discretionary, and (b) neither the statute or ordinance identify a "person"

1  responsible for maintaining navigable airspace, so it should not be responsible because it does not
2  benefit from the operation of the airport.  The court rejected the county's arguments, reasoning that
3  the landowner, as the person "who would allow the offending growth" may be compelled to comply
4  with the restrictions.  *Id.* at 325-26 (adding "sorely missing is any authority to support [the county's]
5  untenable position that it can evade its statutory and municipal duty to maintain its property so as
6  not to endanger the health and safety of the public.").  Importantly, the duty enforced against the
7  County was predicated not on its position of trust as the county, but as its roles as a neighboring
8  landowner.

9  CASA's amicus letter, as well as Defendant's reply brief, couch the mandamus question as a
10 issue of first impression because "Baykeeper cites no case in which a California court has authorized
11 a private citizen or organization to 'enforce' a local ordinance *directly against a third party*,
12 bypassing the local enforcement authority."  Letter at 2; Reply Br. at 12.  This is not strictly
13 accurate.  Plaintiff points to *Rancho Murieta Airport,* which is such a case, as are cases permitting
14 the enforcement of zoning restrictions.  *See, e.g.*, *Sapiro v. Frisbie*, (1928) 93 Cal.App. 299, 305–313
15 (homeowner may seek mandamus enjoin violation of a zoning ordinance without a showing of
16 special injury, on theory that the zoning ordinance extends special protection to all homeowners);
17 *see generally Nestle v. Santa Monica*, 6 Cal. 3d 920, 939-940 (Cal. 1972) (noting, in a nuisance
18 lawsuit, that "the concept is long-standing that a private person who suffers identifiable harm by
19 reason of a violation of a municipal zoning law may sue the violator for compensatory damages and
20 may also seek injunctive relief when applicable." ).

21 West Bay further argues that the operation of the Collection System is committed to its
22 discretion, such that no writ compelling compliance may issue.   As the court in *Morris v. Harper*
23 noted, mandamus generally issues to compel a ministerial act.  94 Cal. App. 4th 52 (1st Dist. 2001);
24 *see also* 8 B.E. Witkin, California Procedure, Extraordinary Writs § 79, at 865 (4th ed. 1997)).  Its
25 application is questionable where issuance of mandamus directs the respondent to exercise
26 discretion in a particular manner.  *See Building Industry Assn. V. Marin Mun. Water Dist.*, 235
27 C.A.3d 1641, 1646 (1991).  Unlike *Rancho Murietta Airport*, or any other cases cited by the parties,
28 any remedy for the alleged violations here would, as a practical matter, be significantly more

complicated than, *e.g.*, trimming trees. Complying with a multitude of ordinances prohibiting SSOs requires substantial judgment and discretion particularly when Defendant is faced with finite resources and possible logistical limitations. A wide range of policy and other choices at multiple levels have to be made. This case is more akin to a jail conditions reform lawsuit than one involving compliance with height or zoning requirements, and neither party has cited any case authority akin to these circumstances in which mandamus has been granted or denied. There appears to be little precedent in this area.

The Court therefore declines to exercise supplemental jurisdiction because Claim III raises novel and complex issues of state law governing mandamus given the standing and relief issues discussed above.[2] Moreover, it would involve the expenditure of substantial additional judicial time and effort. Count III encompasses a larger subset of spills than the remaining counts. Each discharge into the MS4s would be relevant, even if the discharge is not shown to have reached "waters of the United States." As such, the scope of trial would be greatly expanded by the inclusion of the state and local claims alleged in Count III.

### IV. CONCLUSION

The Court **DENIES** each party's requests for judicial notice. Because this matter cannot be resolved on the pleadings as a matter of law, the Court **DENIES** Defendant's Motion under Rule 12(c), and treats it instead as a Motion for Partial Summary Judgment Under Rule 56. After giving due consideration to the motion under the summary judgment standard, the Court hereby **ORDERS** that Defendant's Motion for Partial Summary Judgment is **DENIED** with respect to Count I and **GRANTED without prejudice** as to Count III because the Court declines to exercise supplemental jurisdiction over state law claims asserted under Cal. Code Civ. P. § 1085. Defendant's Motion for a

---

[2] Defendant raised additional arguments in support of its motion to dismiss Count III, *e.g.*, that Plaintiff failed to exhaust administrative remedies. Where Defendant fails to point out authorities in support of its arguments, the Court need not address them at length. Suffice it to say that Defendant has not shown the alleged conduct to be within its discretionary authority, nor has it shown any avenue for administrative review, or even a method of filing grievances, such that Plaintiff's claims do not fail for lack of exhaustion or because they are committed to agency discretion. To the extent additional arguments are contained within Defendant's briefs, the Court need not reach them, as it declines to exercise supplemental jurisdiction over the local law claims asserted in Count III.

Protective Order is accordingly **DENIED.** The parties shall proceed with discovery consistent with this Order and the Case Management Order.

The Order disposes of Docket Nos. 39, 43, 44, and 59.

IT IS SO ORDERED.

Dated: January 11, 2011

_____
EDWARD M. CHEN
United States Magistrate Judge

11