**United States District Court**
For the Northern District of California

1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                         NORTHERN DISTRICT OF CALIFORNIA

7

8    SAN FRANCISCO BAYKEEPER,                No. C-09-5676 EMC

9              Plaintiff,

10         v.                                **ORDER PARTIALLY GRANTING**
                                             **PLAINTIFF'S MOTION FOR INTERIM**
11   WEST BAY SANITARY DISTRICT,             **AWARD OF ATTORNEY'S FEES AND**
                                             **COSTS**
12             Defendant.                    **(Docket No. 139)**

13   _____/

14

15         Plaintiff's motion for an interim award of attorneys' fees and costs came on for hearing

16   before the Court on October 7, 2011.  Docket No. 139.  For the reasons set below, the Court

17   **PARTIALLY GRANTS** Plaintiff's motion for interim attorney's fees and litigation expenses, and

18   **DENIES** Plaintiff's motion for interim expert costs.

19                    **I.    FACTUAL & PROCEDURAL BACKGROUND**

20         Plaintiff San Francisco Baykeeper filed this suit against Defendant West Bay Sanitary

21   District, alleging violations of the Clean Water Act ("CWA"), the California Porter-Cologne Water

22   Quality Control Act, and various municipal ordinances and codes.  Plaintiff sought a judgment

23   declaring that Defendant violated the CWA by discharging pollutants without a permit, an injunction

24   preventing further discharges without a permit, and civil penalties for the alleged discharges.

25   Docket No. 126 at 7 ("Partial Summ. Judgment").  Plaintiff later dismissed its claims under the

26   Porter-Cologne Act, and the Court declined to exercise supplemental jurisdiction over the claims

27   based on municipal ordinances and codes.  Docket No. 160 at 3 ("Opp.").

28

**United States District Court**
For the Northern District of California

1   In January 2011, Plaintiff moved for partial summary judgment with respect to 68 alleged

2   spills.  Docket No. 71.  The Court granted summary judgment with respect to 20 of 23 Sanitary

3   Sewer Overflows ("SSOs") that discharged pollutants directly into surface waters, and 1 of 45 SSOs

4   that discharged from a Municipal Separate Storm Sewer ("MS4") into surface waters for a total of

5   26 days.  Docket No. 126 at 57.

6   Based on this grant of partial summary judgment, Plaintiff now moves for an interim award

7   of attorney's, expert, and litigation fees under § 505(d) of the CWA.  Plaintiff seeks $223,931.06 in

8   expert costs, $4,788.79 in litigation expenses, and $861,665.16 in attorney's fees for a total of

9   $1,090,385.01 in costs through March 25, 2011 and related to this motion.  Motion at 11; Docket

10   No. 163 at 15 ("Reply").

## II.   DISCUSSION

11

12   A.   Attorney's Fees

13   Under § 505(d) of the CWA, "[t]he court, in issuing any final order in any action brought

14   pursuant to this section, may award costs of litigation (including reasonable attorney and expert

15   witness fees) to any prevailing or substantially prevailing party, whenever the court determines such

16   award is appropriate."  33 U.S.C. § 1365(d) (2006).  When passing § 505(d), Congress found that

17   "[t]he Courts should recognize that in bringing legitimate actions under this section citizens would

18   be performing a public service and in such instances, the court should award costs of litigation to

19   such party."  S. REP. NO. 92-414, at 79 (1971), FWPC72 Leg. Hist. 19, at *3747 (LEXIS).

20   The decision to award reasonable attorney's fees requires two findings: that the fee applicant

21   is a prevailing party, and that an award of attorney's fees is appropriate.  *Resurrection Bay*

22   *Conservation Alliance v. City of Seward*, 640 F.3d 1087, 1091 (9th Cir. 2011).  As long as there are

23   no special circumstances that would render the award of attorney's fees unjust, a district court must

24   award a reasonable fee to the prevailing party.  *Id.* at 1094.  A reasonable fee is determined through

25   the lodestar method and application of the *Kerr* factors, the most critical of which is the degree of

26   the success obtained.  *Id.* at 1095.

27   ///

28   ///

2

**United States District Court**
For the Northern District of California

1. <u>Prevailing Party</u>

The Court must first determine whether Plaintiff is a prevailing party. In general, "[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989). This is a "generous formulation," requiring only that "the plaintiff has succeeded on any significant issue in litigation which achieved some of the benefit the parties sought in bringing suit." *Id.* at 792. Even minor relief can create prevailing party status; "while the nature and quality of relief may affect the amount of the fees awarded, an extremely small amount of relief is sufficient to confer prevailing party status." *Saint John's Organic Farm v. Gem Cnty. Mosquito Abatement Dist.*, 574 F.3d 1054, 1059-60 (9th Cir. 2009); *see also Farrar v. Hobby*, 506 U.S. 103 (finding prevailing party status where Plaintiffs sought $17 million in damages and received $1). Thus, a party may obtain attorney's fees once the party prevails on the merits as to one or more of its claims. *Marks v. Clarke*, 102 F.3d 1012, 1034 (9th Cir. 1996).

In the case at bar, Plaintiff seeks an award of interim fees. Courts have awarded interim fees under a number of fee shifting statutes in order "to maintain an equal position among the parties and to ensure that plaintiffs can continue actively pursuing the litigation. Otherwise, defendants could attempt to prevail through a war of attrition." *Golden Gate Audobon Soc'y, Inc. v. U.S. Army Corps of Eng'rs*, 732 F. Supp. 1014, 1021 (N.D. Cal. 1989) (citing *Rosenfeld v. United States*, 859 F.2d 717, 721 (9th Cir. 1989) ("One purpose of an interim award is to enable a meritorious suit to continue")). The Supreme Court has indicated interim fees may be awarded where the plaintiff "established the liability of the opposing party, although final remedial orders had not been entered." *Hanrahan v. Hampton*, 446 U.S. 754, 757 (1980). In *Hanrahan*, however, the Supreme Court denied interim attorney's fees where the plaintiffs had not prevailed on the merits of their claims, but had only established their right to a trial. *Id.* at 758. As a result, the plaintiffs had yet to prevail because at the trial level, "[t]he jury may or may not decide some or all of the issues in favor of the respondents." *Id.* at 759.

1    Following *Hanrahan*, the Ninth Circuit has found that in order to reach prevailing party

2   status, a party need not "win a judgment that ends the litigation on the merits and leaves nothing for

3   the court to do but execute the judgment." *Marks*, 102 F.3d at 1034; *see also Animal Lovers*

4   *Volunteer Ass'n, Inc. v. Carlucci*, 867 F.2d 1224, 1225 ("The fact the dispute between the parties

5   may continue does not preclude a fee award.").  In *Marks*, the Ninth Circuit affirmed partial

6   summary judgment against the defendants based on an unlawful search of persons present at the

7   premises.  102 F.3d at 1034.  The court found that a judgment in favor of the persons searched was

8   appropriate, except for those persons as to whom probable cause existed.  *Id.*  The court left it to the

9   district court to determine which parties the defendants had probable cause to search.  *Id.*  Based on

10   this partial summary judgment, the plaintiffs had established their entitlement to relief rather than

11   being limited to "the mere right to proceed to trial."  *Id.*  By establishing the defendants' liability,

12   the plaintiffs were entitled to interim attorney's fees even though the extent of liability was still to be

13   determined.  *Id.*

14    Likewise, in *Animal Lovers*, the Ninth Circuit awarded interim attorney's fees where the

15   plaintiffs received declaratory relief but had yet to receive injunctive relief.  867 F.2d at 1227.  The

16   court found that its determination that the Environmental Assessment did not support the

17   defendants' finding of no significant impact satisfied the plaintiffs' request for declaratory relief,

18   and put the plaintiffs, "as a practical matter, in a markedly better position than at the outset of their

19   lawsuit."  *Id.*  Because the plaintiffs had succeeded on a significant issue in litigation which

20   achieved some of the benefit that they had sought in bringing suit, the court awarded them attorney's

21   fees.

22    In *Golden Gate Audobon Society*, the court granted interim attorney's fees to the plaintiffs

23   based on a partial grant of summary judgment in a case asserting a violation of the CWA.  *Golden*

24   *Gate Audobon Soc'y, Inc. v. U.S. Army Corps of Eng'rs*, 738 F. Supp. 339, 340 (N.D. Cal. 1988).

25   After finding there was no direct cause of action under the CWA, the court nonetheless awarded fees

26   under the Equal Access to Justice Act after it found that the Defendants had failed to properly

27   interpret the CWA when enforcing the statute against a Port.  *Id.* at 343.  Although the plaintiffs had

28   yet to achieve their ultimate goal of stopping the Port's operations, the court found that its decision

United States District Court

For the Northern District of California

1    to have the defendants re-examine the Port's actions was sufficient to make the plaintiffs prevailing

2    parties for the purpose of awarding interim attorney's fees under the EAJA.  *Id.*

3            Similarly, in *United States v. City of San Diego*, the court awarded interim fees to an

4    intervenor-Plaintiff who had sought to prevent entry of a proposed decree after the court deferred

5    approval of the consent decree.  18 F. Supp. 2d 1090, 1096 (S.D. Cal. 1998).  The court did not

6    make a final decision on the consent decree until two years after the award of interim fees.  Id.

7            Defendant does not contend that interim fees can never be awarded under the CWA.  It does

8    not seek to distinguish the CWA fee provision from *e.g.,* the EAJA in this regard, even though §

9    505(d) of the CWA refers to issuance of "final order" as a predicate to awarding fees.  Like the

10   CWA, the EAJA also has a "final judgment" requirement.  28 U.S.C. § 2412(d)(1)(B) (2006) ("[a]

11   party seeking an award of fees and other expenses shall, within thirty days of *final* judgment, submit

12   to the court in an application for fees and other expenses . . . ." (emphasis added)).  Notwithstanding

13   that language in the EAJA, the court in *Golden Gate Audobon Society* found that a final judgment

14   was not required because legislative history "explicitly states that this subsection should not be

15   construed as requiring a final judgment on the merits before a court may award fees."  738 F. Supp.

16   at 341 (citation omitted).  Similarly, the CWA's legislative history also states that a court need not

17   wait for a final verdict in awarding costs of litigation under § 505(d).  S. REP. NO. 92-414, at 79

18   (1971) ("if as a result of a citizen proceeding and before a verdict is issued, a defendant abated a

19   violation, the court may award litigation expenses borne by the plaintiff in prosecuting such

20   actions.").  The Ninth Circuit appears to have assumed that fees may be awarded on the basis on an

21   interim ruling.  *See Idaho Conservation League, Inc. v. Russell*, 946 F.2d 717, 722 (9th Cir. 1991)

22   (court refused to award fees under the CWA against the EPA because, *inter alia,* "the district court

23   issued no ruling, interim or final, against the EPA"); *see also United States v. City of San Diego*, No.

24   92-56494, 1994 U.S. App. LEXIS 13192, at *6 (9th Cir. May 23, 1994) (dismissing appeal on

25   interim attorney's fees under the CWA because there was no final, appealable order).

26           Defendant argues that Plaintiff is not yet a prevailing party.  It argues even a declaratory

27   judgment is insufficient to confer prevailing party status because it does not materially alter the

28   relationship between Plaintiff and Defendant.  Opp. at 7, 9.  Defendant cites *Sierra Club v. City of*

United States District Court

For the Northern District of California

*Little Rock*, an Eighth Circuit case where the court denied attorney's fees. 351 F.3d 840, 842 (8th Cir. 2003). In *Sierra Club*, the plaintiff brought suit against two parties: the City's Sewer Committee and the City itself. The plaintiff ultimately settled with the Sewer Committee and received summary judgment against the City for violating the City's permit. *Id.* at 844. However, the district court refused to enter an injunction against the City and awarded no other relief. *Id.* at 844. In determining that the plaintiff was not a prevailing party, the Eighth Circuit found that the summary judgment did not alter the legal relationship between the parties because it was only a declaration that the City had violated its permit, with no enforceable judgment on the merits. *Id.* at 845. It found that a declaratory judgment does not constitute relief unless it affects the behavior of the defendant towards the plaintiff and that a judicial pronouncement of a law violation without an enforceable judgment on the merits did not confer prevailing party status. 351 F.3d at 845.

The Court finds that *Sierra Club* is contrary to Ninth Circuit case law. The Ninth Circuit has held that an actual grant of relief is not necessarily required to confer prevailing party status. *See Marks v. Clark*, 102 F.3d at 1034. Indeed, the Ninth Circuit has held that fees may be awarded upon reversal of an interlocutory appeal before even liability is established at trial. *See Mantolete v. Bolger*, 791 F.2d 784, 787 (9th Circ. 1986); *see also Animal Lovers*, 867 F.2d at 1225.

The standard for fee award under the CWA is a liberal one. For instance, in *Saint John's*, the Ninth Circuit found that a settlement agreement between the parties was sufficient to confer prevailing party status upon the plaintiff. 574 F.3d at 1058-59 (9th Cir. 2009).[1] There, the plaintiff argued that he was a prevailing party based on his settlement agreement with the district court to reduce use of particular pesticides. *Id.* at 1057. The Court found that the agreement conferred prevailing party status on the plaintiff. First, the agreement materially altered the legal relationship between the parties even though the agreement required the defendant to do what it was already doing because that behavior was now legally required rather than voluntary. *Id.* Second,

---

[1] The Court found that the settlement agreement could be the basis for an award of attorney's fees because it was judicially enforceable by the Court, as opposed to a purely private settlement agreement. *Saint John's Organic Farm*, 574 F.3d at 1059; *Richard S. v. Dep't of Developmental Servs.*, 317 F.3d 1080, 1086, 1088 ("under applicable Ninth Circuit law, a plaintiff 'prevails' when he or she enters into a legally enforceable settlement agreement against the defendant.").

United States District Court

For the Northern District of California

1    emphasizing that "[t]he threshold for sufficient relief to confer prevailing party status is not high,"

2    the Court found that the plaintiff achieved actual relief even though his complaint sought to require

3    the defendant to stop discharging pesticides without a permit. *Id.* at 1059, 1060.  While the EPA

4    ultimately refused to issue a permit to the defendant, the settlement gave the plaintiff "the equivalent

5    of an injunction against discharges of [pes]ticides into those waters." *Id.*

6         In claims based on the CWA, the Ninth Circuit has found that a grant of declaratory relief

7    "delineates important rights and responsibilities and can be a message not only to the parties but also

8    to the public and has significant educational and lasting importance." *Natural Res. Def. Council v.*

9    *U.S. EPA*, 966 F.2d 1292, 1299 (9th Cir. 1992).

10        The Court concludes Plaintiff has established prevailing party status.  Plaintiff has a judicial

11   determination that Defendant violated the CWA.  The Court has found in favor of Plaintiff with

12   regard to Defendant's liability on 21 SSOs.  In obtaining partial summary judgment, Plaintiff has

13   established that it is entitled to more than the mere right to proceed to trial; it has improved its legal

14   position in this case – it is in a "markedly better position that at the outset" of the lawsuit. *Animal*

15   *Lovers*, 867 F.2d at 1225, *quoting Mantolete, supra*; *compare with Golden Gate Audobon Soc'y*, 738

16   F. Supp. at 343; *Marks*, 102 F.3d at 1034.  By establishing Defendant's liability under the CWA,

17   Plaintiff has effected a material alteration in the legal relationship between the parties.  Indeed,

18   although this Court makes no decision at this point, some (but not all) courts have stated that once a

19   CWA violation is found, civil penalties are mandatory.  *See Leslie Salt Co. v. United States*, 55 F.3d

20   1388, 1397 (9th Cir. 1995) ("We agree with the [Fourth and Eleventh C]ircuits that have held that

21   civil penalties are mandatory under section 309(d)"); *Stoddard v. W. Carolina Reg'l Sewer Auth.*,

22   784 F.2d 1200, 1208 (4th Cir. 1986) (finding that section 309(d)'s penalty provision "leaves little

23   doubt that . . . a penalty in some form is mandated.  Liability under the [CWA] is a form of strict

24   liability."); *Haw.'s Thousand Friends v. City & County of Honolulu*, 821 F. Supp. 1368, 1394 (D.

25   Haw. 1993) ("Civil penalties are mandatory once [CWA] violations are found, although the amount

26   to be assessed is wholly within the discretion of the court"); *Catskill Mountains Chapter of Trout*

27   *Unlimited, Inc. v. City of New York*, 244 F. Supp. 2d 41, 48 n.6 (N.D.N.Y. 2003) (describing cases

28

**United States District Court**

For the Northern District of California

1  that found mandatory civil penalties under the CWA).  This Court finds that Plaintiff achieved

2  prevailing party status by establishing Defendant's liability under the CWA.

3        2.    <u>Appropriateness of an Interim Award of Fees</u>

4       Once the Court determines that a plaintiff is a prevailing party, the CWA provides for an

5  award of attorney's fees where such an award is "appropriate."  The Ninth Circuit uses the "special

6  circumstances" test to determine whether an exception to a presumption of an award of attorney's

7  fees applies under § 505(d).  Under this test, the Court may only deny attorney's fees to a prevailing

8  party when there are special circumstances.  *Saint John's*, 574 F.3d at 1064.  The Ninth Circuit

9  found special circumstances where the plaintiff could have retained counsel without the prospect of

10  an attorney's fee, where the plaintiff was the primary beneficiary of the litigation's success, where a

11  defendant did not anticipate being required to pay attorney's fees, and where a plaintiff failed to

12  adequately brief issues presented to the Court.  *Resurrection Bay*, 640 F.3d at 1092-93.  When

13  applying the special circumstances test, the Court's discretion to deny attorney's fees to a prevailing

14  party is narrow and fee awards "should be the rule rather than the exception."  *Saint John's*, 574

15  F.3d at 1062.

16       In *Resurrection Bay*, the Ninth Circuit rejected the district court's finding that the plaintiff's

17  victory was so insignificant as to constitute a special circumstance.  640 F.3d at 1094.  There, the

18  plaintiffs only received nominal damages of $1 instead of the $76 million in civil penalties sought

19  by the complaint, there was little evidence of actual pollution, and the defendant was only required

20  to apply for a permit that would allow it to continue activities it was already engaged in.  *Id.* at 1093.

21  Instead of focusing on this limited relief, the Ninth Circuit found that the purpose of the CWA was

22  to restore the integrity of America's waters through the permitting process.  *Id.*  By requiring the

23  defendants to submit to the permitting process, the plaintiffs promoted the purpose of the CWA and

24  were entitled to attorney's fees.  *Id.* at 1094.

25       In the instant case, Defendant argues that a special circumstance exists from Plaintiff's

26  failure to alert the Court to Supreme Court precedent requiring tailoring of the fee award and

27  Plaintiff's subsequent failure to tailor the fee award to reflect its limited success.  Opp. at 10, 12.  As

28

1  support, Defendant cites *Lewis v. Kendrick*, in which the court denied attorney's fees to a plaintiff

2  who:

> after a lengthy trial, strikingly unsuccessful, not [only] did counsel
> make no good faith effort to exclude from a fee request hours that
> [we]re excessive, redundant, or otherwise unnecessary, but they made
> no reduction for claims against the officers that the jury did not accept,
> nor for the claim again against the City that was of no concern to the
> officers–the only fee payers.

7  949 F.2d 949, 957-58 (1st Cir. 1991) (cited positively by *Resurrection Bay*, 640 F.3d at 1093).

8  *Lewis* is distinguishable from the instant case; in finding that a special circumstance existed, the

9  First Circuit found that the plaintiff's fee request was grossly excessive in light of the weakness of

10  the plaintiff's claims, reflected by the plaintiff's very limited success. *Id.* at 956; *see also*

11  *Resurrection Bay*, 640 F.3d at 1093 (describing *Lewis* as "denying a fee award to a plaintiff who

12  failed to make a good faith effort to tailor her fee request to reflect that she had been 'strikingly

13  unsuccessful' at trial and had lacked evidentiary support for many of her claims").  While the

14  plaintiff in *Lewis* "failed entirely, or largely, in everything," Plaintiff in the instant case has

15  established Defendant's liability under the CWA.  *Lewis*, 949 F.2d at 955.

16  Defendant also argues that a special circumstance exists from Plaintiff's failure to identify

17  Supreme Court precedent requiring that a party tailor its fee request to reflect limited circumstance.

18  However, this issue of limited success is only relevant to determining whether the requested fees are

19  reasonable, not whether the Court should award any fees at all.  Given that this alleged omission is

20  limited to attorney's fees rather than the merits of the case, and that Defendant has failed to identify

21  any authorities that suggest this type of omission would constitute a special circumstance, the Court

22  finds that no special circumstances exist.

23       3.    <u>Reasonableness of Requested Attorneys' Fees</u>

24         a.    <u>Standard of Review</u>

25  A prevailing party is entitled only to reasonable attorney's fees. The "starting point to

26  determining the amount of a reasonable fee is the number of hours reasonably expended on the

27  litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 431 U.S. 424, 433 (1983).

28  The party seeking the award must submit evidence supporting the hours worked and rates claimed,

United States District Court

For the Northern District of California

1  and where the party fails to submit adequate evidence, the amount awarded may be reduced.  *Id.*

2  The Court must then adjust this lodestar amount by the degree of success obtained.  *Id.* at 440;

3  *Resurrection Bay*, 640 F.3d at 1095.

4        In awarding reasonable attorney's fees, the Court "must strike a balance between granting

5  sufficient fees to attract qualified counsel . . . and avoiding a windfall to counsel."  *Moreno v. City of*

6  *Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).  The Court must explain the amount that is

7  ultimately given, although "[w]here the difference between the lawyer's request and the court's

8  award is relatively small, a somewhat cursory explanation will suffice."  *Id.*

9                 b.    Lodestar Calculation

10                    i.    Reasonableness of Rates Sought

11        In determining the reasonableness of rates, the Court may compare the requested rate with

12  the prevailing rate in the community for similar work performed by attorneys of comparable skill,

13  experience, and reputation.  *Id.* at 1111; *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11

14  (9th Cir. 1986).  Furthermore, "[t]he quality of counsel and novelty and complexity of the

15  case[]should ordinarily be reflected in the lodestar rate."  *Cmty. Ass'n for Restoration of the Env't v.*

16  *Henry Bosma Dairy*, No. CY-98-3011-EFS, 2001 U.S. Dist. LEXIS 3579, at *55 (E.D. Wash. Feb.

17  27, 2001).

18        In the instant case, Plaintiff used the 2011-2012 Laffey Matrix as a guide for calculating

19  attorney rates.  The Laffey Matrix is designed to provide objective guidance in assessing appropriate

20  hourly rates depending on attorney experience.  *See* Docket No. 151 ¶ 16 ("Sproul Decl.").  Plaintiff

21  then calculated the annual step increase in salary for every year of experience, and added it to the

22  base hourly rate.  Finally, Plaintiff multiplied this salary by 10.93% to reflect San Francisco rates.

23  The proposed attorney rates are:

| Name | Number of Years | Rate |
|------|-----------------|------|
| Christopher Sproul | 25 | $585.00 |
| Daniel Cooper | 21 | $550.00 |
| Layne Friedrich | 14 | $500.00 |

| Martin McCarthy | 14 | $500.00 |
| Justin Lucke | 12 | $475.00 |
| Jodene Issacs | 8 | $385.00 |
| Brian Orion | 6 | $350.00 |
| Samantha Williams | 6 | $350.00 |
| Drevet Hunt | 6 | $350.00 |
| Jason Flanders | 6 | $350.00 |
| Caroline Koch | 2 | $300.00 |
| Andrea Kopecky | 1 | $100.00 - $200.00 |

Plaintiff also identifies salary rates of other San Francisco attorneys who specialize in environmental litigation.

| Attorney Name | Firm | Number of Years | Rate |
|---|---|---|---|
| Mike Sherwood | Earthjustice Legal Defense Fund | 44 | $775.00 |
| Fred Altshuler | Altshuler Berzon LLP | 43 | $775.00 |
| Trent Orr | Earthjustice Legal Defense Fund | 34 | $750.00 |
| Hal Candee | Altshuler Berzon LLP | 28 | $725.00 |
| Thomas Lippe | Lippe, Gaffney, Wagner LLP | 27 | $580.00 |
| Michael Lozeau | Law Offices of Michael Lozeau | 22 | $650.00 |
| Brian Gaffney | Lippe, Gaffney, Wagner LLP | 18 | $540.00 |
| Laura Robb | Earthjustice Legal Defense Fund | 10 | $450.00 |
| Andrea Treece | Earthjustice Legal Defense Fund | 9 | $420.00 |
| George Torgun | Earthjustice Legal Defense Fund | 9 | $420.00 |
| Stuart Naifeh | Altshuler Berzon LLP | 7 | $370.00 |

Defendant challenges the rates used by Plaintiff's counsel on three grounds.  First, Defendant argues that Plaintiff overcharged because they used the 2011-2012 Laffey Matrix rates for all work performed in this litigation since December 2009, even though counsel would not have had the same experience two years ago as they would now.  Opp. at 15.  According to Defendant, the hourly rate

United States District Court
For the Northern District of California

should reflect an attorney's actual experience level when they performed the work.  However, where a plaintiff's entitlement to attorney's fees depends on success, which may not happen for several years, "the courts have regularly recognized the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value."  *Missouri v. Jenkins*, 491 U.S. 274, 282 (1989); *see also Perdue v. Kenney A.*, 130 S. Ct. 1662, 1675 (2010) ("An attorney who expects to be compensated under § 1988 presumably understands that payment of fees will generally not come until the end of the case, if at all.  Compensation for this delay is generally made either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value."); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 453 (9th Cir. 2010) (rejecting contention that district court should not have awarded fees at 2008 rates for work performed in 2007 because "a district court's determination to adjust to current rates rather than to make an interest adjustment squarely is within the bounds of its discretion.").  Plaintiff's attorneys have worked on this case since December 2009, nearly two years ago.  In recognition of this delay factor, the Court finds that Plaintiff's counsel is not required to adjust its rates to reflect historic rates.[2]

Second, Defendant argues that counsel padded the Laffey Matrix numbers to increase billing rates above the matrix values.  Opp. at 15.  However, the Laffey Matrix numbers are only one part of the rate calculation, and Plaintiff's counsel often charged less than the rate estimated from the Laffey Matrix number.  For example, Layne Friedrich calculated the Laffey Matrix rate at $521.37/hr., but charged $500.00/hr.  Docket No. 144 ¶ 18 ("Friedrich Decl.").  In addition to their years of practice, Plaintiff's attorneys have significant experience in CWA litigation, which supports a higher rate given counsels' specialization in this area.  Sproul Decl. ¶¶ 7-12, 25, 31; Docket No. 142 ¶¶ 3-6 ("Kopecky Decl."); Docket No. 143 ¶ 18 ("Cooper Decl."); Friedrich Decl. ¶¶ 5, 9; Docket No. 145 ¶ 8 ("Hunt Decl."); Docket No. 146 ¶ 8 ("Koch Decl."); Docket No. 147 ¶¶ 6-7 ("Lucke Decl."); Docket No. 148 ¶¶ 7, 9 ("Williams Decl.").  The rates charged by Plaintiff's

---

[2]  The Court also notes that the rates charged by Lawyers for Clean Water have not increased since 2009, and would therefore be comparable to the 2009-2010 Laffey rates.  Docket No. 167 ¶ 10 ("Supp. Friedrich Decl.").

1    attorneys are also comparable to other San Francisco attorneys who specialize in representing public

2    interest clients in environmental litigation.  Finally, the rates charged by the Lawyers for Clean

3    Water attorneys have been approved by other courts as reasonable.  *See, e.g.*, *Edwards v. City of*

4    *Colfax*, Case 2:07-cv-02153-GEB -EFB, 2011 U.S. Dist. LEXIS 17105, at *25 (E.D. Cal. Feb. 15,

5    2011); Cooper Decl. ¶ 22.  Taken together, Defendant has failed to demonstrate that the rates

6    charged by Plaintiff's counsel is unreasonable or inconsistent with the prevailing rates of attorneys

7    in the San Francisco area.

8         Third, Defendant argues that Plaintiff billed secretarial and paralegal work at attorney rates,

9    such as scanning, data entry, and mailing.  As an example, Defendant cites attorney charges of

10   $350/hr for 60 hours of pulling Defendant's spill information off the internet, scanning documents,

11   and inputting the data into tables.  Opp. at 16.  The Ninth Circuit rejected a similar challenge in

12   *Moreno*, where the Court found that "the partner in charge would still have had to familiarize

13   himself with the documents, a step that plaintiff's counsel avoided by reviewing the documents

14   herself.  Moreover, lead counsel can doubtless complete the job more quickly, being better informed

15   as to which documents are likely to be irrelevant, and which needs to be examined closely."

16   *Moreno*, 534 F.3d at 1115.  Plaintiff likewise has stated that it was more efficient to have attorneys

17   review the documents while performing these tasks in order to determine their relevancy, and that

18   these tasks were delegated to junior attorneys.  Reply at 7.  Otherwise, Plaintiff would have to copy

19   thousands of pages of documents, only to then have an attorney review the documents to determine

20   which were relevant to the suit.  Docket No. 165 ¶ 5 ("Supp. Cooper Decl.").  Plaintiff also states

21   that where true paralegal tasks were performed and secretaries or paralegals were not available to

22   perform that task, counsel was directed to charge paralegal rates or apply billing judgment to prevent

23   over-billing.  Supp. Cooper Decl. ¶ 8.

24        The Court finds that the rate charged by Plaintiff's counsel is reasonable, given the

25   experience of the attorneys and the rate's consistency with prevailing rates of other San Francisco

26   attorneys who specialize in public interest environmental litigation.

27   ///

28   ///

13

ii.      Reasonableness of Hours Charged

In determining the reasonable number of hours expended on a case, the Court may reduce the number of hours awarded if the lawyer performed unnecessarily duplicative work. *Moreno*, 534 F.3d at 1112. However, determining what is unnecessary is difficult as "[o]ne certainly expects *some* degree of duplication as an inherent part of the process." *Id.* Thus, "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Id.* The Court should not speculate as to how other firms might have staffed the case or impose its own judgment regarding the best way to operate a law firm, but should instead look at the difficulty and skill level of the work performed. *Id.* at 1114.

Plaintiff has justified the number of hours charged on the grounds that the case involved "a complex environmental enforcement action involving hundreds of spills of thousands of gallons of raw sewage from hundreds of miles of underground pipe that spans 6 cities and 2 counties discharging to at least 6 distinct waterways." Motion at 14. This necessitated analysis of Defendant's discharges and operations, extensive settlement negotiations and mediation settlements, discovery requests, defending against Defendant's motion for judgment on the pleadings and motion for protective order, as well as Plaintiff's motion for partial summary judgment. Motion at 14-16. Finally, Plaintiff asserts that its attorneys used their billing judgment to eliminate unnecessary billing hours, including a 20.8% reduction by Lawyers for Clean Water counsel. Motion at 9-10; Supp. Friedrich Decl. ¶ 10.

Defendant challenges the hours charged by Plaintiff's counsel on four grounds. First, Defendant argues that the spills that Plaintiff actually succeeded in establishing Defendant's liability on "were not unduly difficult, complex, or novel" because the violations were all based on Defendant's own self-reporting. Opp. at 17; *see also* Partial Summ. Judgment at 46-50, 54-55. Despite this self-reporting, Defendants argue that Plaintiff's counsel still spent over 83 hours investigating the SSOs. Opp. at 18. Plaintiffs respond that even if establishing Defendant's liability was based on Defendant's self-reporting, establishing liability was not simple because Defendant refused to cooperate during discovery. Reply at 8. Defendant refused to admit the authenticity of its own spill reporting in response to requests for admission, contested every spill and every waterway,

1  failed to timely produce responsive documents, and contested the adequacy of Plaintiff's intent to

2  file suit notice letter. Reply at 8. In addition to establishing that the spill occurred, Plaintiff had to

3  establish that the 9 affected waterways were jurisdictional waters of the United States. Partial

4  Summ. Judgment at 58. Plaintiff also established that the spills occurred outside of a valid CWA

5  permit or the CWA's Waste Treatment Exception. Partial Summ. Judgment at 73. Establishing

6  Defendant's liability under the CWA thus required significant work in addition to Defendant's self-

7  reporting. Furthermore, to the extent Plaintiff largely prevailed on SSOs that were based on self-

8  reports and did not obtain summary judgment as more factually complicated claims, the Court

9  accounts for this in examining results obtained.

10      Second, Defendant argues that Plaintiff's counsel spent too many hours on this suit,

11  considering Plaintiff's prior experience on similar cases. For example, Plaintiff's counsel spent over

12  150 hours conducting pre-complaint work, despite having brought and settled similar cases against

13  public agencies and using materials from these cases in preparing the Notice of Violation letter.

14  Opp. at 17. However, it is insufficient to allege that Plaintiff should have spent fewer hours on the

15  case simply because they have worked on other CWA cases. The court in *Golden Gate Audubon*

16  *Society* rejected a similar argument by the defendant, who contended that because the plaintiff used

17  portions of pleadings in another action to draft their partial summary judgment brief and supporting

18  affidavits, the hours expended were excessive. 732 F. Supp. at 1017. Instead, the court found that

19  "it does not follow that because plaintiffs were able to employ segments of existing pleadings . . . the

20  hours requested for preparing their summary judgment motion must be automatically discounted.

21  Rather, the question is whether it was reasonable to expend [those] hours to prepare plaintiff's

22  summary judgment brief." *Id.* The court concluded that given the complexity of the case and the

23  issues raised, the hours expended were reasonable and may have "considerably exceeded" the hours

24  charged if the plaintiffs had not used portions of documents from the other actions. *Id.* at 1018.

25      Plaintiff contends that each sewage case is unique depending on the location of the spill, the

26  cause of the spill, the receiving water, the response and reporting, and the responsible entities.

27  Reply at 9. Given that Plaintiff must thoroughly investigate potential claims on a case-by-case basis

28  prior to initiating an enforcement action, the hours spent on pre-enforcement work are reasonable.

United States District Court

For the Northern District of California

1    Absent a specific showing that Plaintiff's counsel should have charged fewer hours given the

2    complexity of the instant case, Defendant's argument is unavailing.

3        Third, Defendant argues that Plaintiff engaged in unnecessary duplication and overstaffing,

4    including hiring two outside firms in addition to its in-house counsel.[3]  First, Defendant challenges

5    any work performed by Environmental Advocates ("EA"), contending that EA attorneys were

6    "completely absent from this case."  Opp. at 19.  Plaintiff responds that EA attorneys continued to

7    work on the case even though they no longer participated directly in meetings with Defendant in

8    order to avoid unnecessary duplication.  Docket No. 168 ¶ 4 ("Supp. Sproul Decl.").  EA attorneys

9    worked on developing an overall case strategy and worked on other litigation tasks, including co-

10   conducting mediation settlement meetings, developing a summary judgment strategy, developing

11   and responding to discovery, responding to Defendant's motion to dismiss, and drafting witness

12   declarations.  Sproul Decl. ¶¶ 38-39.  Defendant also challenges hours charged by Plaintiff's in-

13   house counsel as client work that is not recoverable.  Opp. at 21.  However, Plaintiff argues that in-

14   house counsel only sought recovery for legal work performed as an attorney, not as a client.  Reply

15   at 9; Docket No. 166 ¶ 6 ("Supp. Flanders Decl.").  Upon examination of the relevant billing

16   statements, the Court finds that work performed by EA attorneys was relevant to the case and that

17   in-house counsel work was not improperly billed.  *See* Docket No. 141-1; Docket No. 151-3; Docket

18   No. 151-4; Docket No. 151-5.

19       Finally, Defendants challenge Plaintiff's billing statements as too vague to determine

20   whether the time spent on the task was actually reasonable or necessary.  Opp. at 21.  Under

21   *Hensley*, "Plaintiff's counsel . . . is not required to record in great detail how each minute of his time

22   was expended.  But at least counsel should identify the general subject matter of his time

23   expenditures."  461 U.S. at 437 n.12.[4]  The Ninth Circuit has approved of billing statements where

24   "[a]lthough the time descriptions are minimal, they establish that the time was spent on the matters

25

26       [3] As Plaintiff observes, Defendant likewise has hired two outside firms in this litigation.

27       [4] Plaintiff also argues that in the Ninth Circuit, a summary of broad categories of tasks are
     sufficient; however, in Plaintiff's cited case, the Ninth Circuit only stated that this summary was
28   sufficient to avoid denying a fee application in its entirety.  *Fischer v. SJB-P.D., Inc.*, 214 F.3d
     1115, 1121.

United States District Court

For the Northern District of California

1    for which the district court awarded attorneys' fees." *Lytle v. Carl*, 382 F.3d 978, 989 (9th Cir.

2    2004).  Plaintiff has provided records that identifies the type of work conducted, the document

3    worked on, and when applicable the names of parties met.  Many of Defendant's vagueness

4    objections concern redacted information,[5] but even with such redactions the records are still

5    sufficient to allow the Court to identify how each attorney spent their time and its relevance to the

6    case.

7         The Ninth Circuit has required that Courts not speculate as to how the case should have been

8    staffed or pursued.  *Moreno*, 534 F.3d at 1115.  The Court finds that Plaintiff has provided thorough

9    documentation of the hours spend on this litigation and offered sufficient explanations to

10   Defendant's challenges to the hours charged.  Combined with the complexity of CWA litigation and

11   the number of spills at issue in this case, the Court finds that the hours charged by Plaintiff are

12   reasonable.

13                    c.    Lodestar Adjustments Reflecting Plaintiff's Limited Success

14        Once a lodestar is calculated, the Court must determine whether a reduction of the lodestar

15   amount if warranted in light of the plaintiff's success.  *Hensley*, 461 U.S. at 440.  Where claims for

16   relief are based on a common core of facts or related theories, "[m]uch of counsel's time will be

17   devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a

18   claim-by-claim basis."  *Id.* at 435.  Thus, such suits should not be viewed as a series of discrete

19   claims but should be judged based on the significance of the overall relief obtained in relation to the

20   hours reasonably expended on the litigation.  *Id.*  In making an adjustment to reflect a plaintiff's

21   limited success, the district court must use its discretion and provide a clear explanation of its

22   reasons for the adjustment.  *Id.* at 437.  The Court applies the aggregative approach because of the

23   difficulty in segregating time spent on the SSO in which a violation of the CWA has been

24   established and those where it has not.

25        Applying *Hensley*, the Court in *Henry Bosma Dairy* reduced the requested attorney's fees by

26   30% to reflect the limited success of the case.  *Cmty. Ass'n for Restoration of the Env't v. Henry*

27   _____

28        [5] The Court observes that in several of Defendant's vagueness objections, explanations that were marked as redacted in Plaintiff's billing statements were removed in Defendant's description.

United States District Court
For the Northern District of California

*Bosma Dairy*, NO. CY-98-3011-EFS, 2001 U.S. Dist. LEXIS 3579, at *61 (E.D. Wash. Feb. 27, 2001). In that case, the plaintiffs only proved 11 of the 61 CWA violations alleged in the complaint, but also demonstrated that the defendant was continuing to violate the CWA and would likely continue to violate the CWA in the future. *Id.* at *60-61. Thus, regardless of the plaintiff's limited success on the actual number of violations proven at trial, the plaintiff's "success, although limited to some extent, benefitted the public at large beyond the benefit conferred on the client." *Id.* The Ninth Circuit rejected a challenge by the Defendant to eliminate fees where Plaintiff failed to establish a CWA violation, finding that "even if a specific claim fails, the time spent on that claim may be compensable, in full or in part, if it contributes to the success of other claims. The district court properly concluded that all of [the plaintiff's] initial claims had similar factual bases, were based on similar legal theories, and targeted a single course of conduct by [the defendant]." *Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 956 (9th Cir. 2002). It then upheld the 30% reduction, finding that the district court could find that a full fee award was excessive in light of the plaintiff's limited success, even though the plaintiff had conferred a benefit on the public at large by establishing the defendant's liability under the CWA. *Id.* at 957.

In the instant case, Plaintiff has succeeded in establishing Defendant's liability under the CWA by achieving summary judgment on 21 SSOs. Motion at 20. The Court agrees with Defendant that the lodestar amount should be reduced to reflect the limited success obtained by Plaintiff from the partial summary judgment. While Plaintiff has succeeded in establishing Defendant's liability under the CWA, it has only established liability in regard to 21 SSOs that were discharged for a total of 26 days. Partial Summ. Judgment at 57. Plaintiff has yet to establish liability on the majority of the alleged SSOs, and a reduction is warranted given Plaintiff's limited success at this interim stage.

Defendant acknowledges that it is difficult to calculate an appropriate reduction from Plaintiff's billing statement as the billing entries to not segregate between work relating to the 21

///

///

///

18

SSOs that Plaintiff succeeded on and the remaining SSOs.[6]  Opp. at 24-25.  Defendant suggests

awarding Plaintiff 13% of the lodestar, on the grounds that Plaintiff succeeded on 21 of the 162

specific SSOs that Plaintiff alleged in its Complaint.  Opp. at 25.  However, the Supreme Court has

rejected such mathematical ratios, finding that "[s]uch a ratio provides little aid in determining what

is a reasonable fee in light of all the relevant factors."  *Id.* at 435 n.11.  Likewise, in *Henry Bosma*

*Dairy*, the Court reduced the plaintiff's attorney's fees by only 30% even though the plaintiffs had

only established 18% of the alleged violations.  2001 U.S. Dist. LEXIS 3579, at *60.

      In light of Plaintiff's limited success at this stage of the litigation, the Court finds that a 50%

reduction is warranted.[7]  The Court finds that this reduction is warranted given that Plaintiff has yet

to establish Defendant's liability on the vast majority of SSOs.  As noted above, the SSO in which

Plaintiff obtained summary judgment were factually simpler than the other SSOs.  Furthermore,

unlike *Henry Bosma Dairy*, Plaintiff has only established Defendant's past liability.  This is, of

course, without prejudice to an award of additional fees which can include time spend on activities

---

    [6] As support, Defendant cites *United States v. City of San Diego*, stating that the Court reduced interim fees to 15% of the total amount of fees claimed.  Opp. at 25 (citing 18 F. Supp. 2d at 1097).  In the cited opinion, however, the court was considering the intervening party's *final* attorney's fee request, not the interim request.  18 F. Supp. 2d at 1097.  That opinion provides little insight to an appropriate reduction because there, the court explicitly chose to compensate the intervening party for work on issues on which it prevailed, and applied an issue-by-issue analysis rather than the percentage reduction that Defendant now seeks. *Id.* at 1098; *see also United States v. City of San Diego*, CASE NO. Civ. 88-1101-B, 1998 U.S. Dist. LEXIS 21908, at *8-9 (S.D. Cal. Oct. 26, 1998) (explaining that the Court used an issue-by-issue analysis because "[t]his seemed to the Court to be a more thoughtful, albeit more difficult, method of adjustment than reducing Sierra Club's fee by an arbitrary percentage.").  It is likely that the court used a similar issue-by-issue analysis in awarding the interim fees, as it awarded attorneys' fees and costs based on the intervening party's success on two discrete issues. *See United States v. City of San Diego*, 1994 U.S. App. LEXIS 13192, at *2.  Given that a similar issue-by-issue analysis is not possible in this case, as Plaintiff did not segregate its billing entries by SSO, the Court finds *United States v. City of San Diego* inapposite to the instant case.

    [7] Defendant argues that Plaintiff has failed with respect to the state law causes of action, but the Supreme Court found in *Hensley* that "litigants in good faith may raise alternate legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee."  461 U.S. at 435.  Here, Plaintiff's claims consisted of different theories but were based on the same SSOs, and Plaintiff's ultimate goal was to establish Defendant's liability for the spilling of raw sewage.  Even if Plaintiff's claims under the state law causes of action were rejected, Plaintiff still established that Defendant was statutorily liable for the spills by showing that the SSOs were released in violation of the CWA.  As the state law violations were an alternative legal grounds for Plaintiff's desired outcome of establishing Defendant's liability for unpermitted spills, Defendant's argument that a reduction based on Plaintiff's lack of success on the state law causes of action fails.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   sought herein if Plaintiff establishes Defendant's liability on the remaining SSOs, and demonstrate

2   time spent in connection with the motion for summary judgment contributed to the ultimate result.

3   The Court thus awards $430,832.58 in attorney's fees.

4   B.      Expert Costs

5          Plaintiff seeks $223,931.06 in expert costs through March 25, 2011.  Motion at 20.  Under §

6   505(d), the Court may award reasonable expert witness fees to any prevailing or substantially

7   prevailing party.  33 U.S.C. § 1365(d).  Motion at 20.  In determining the reasonableness of expert

8   costs, the Court in *Henry Bosma Dairy* focused on the importance of the expert's expertise.  2011

9   U.S. Dist. LEXIS 3579, at *62.  Although the Court acknowledged that the plaintiff did not prevail

10  on every issue, the Court still awarded expert costs because the expert's testimony was particularly

11  relevant to the Court's ultimate determinations.  *Id.* at *61-62.

12         Plaintiff argues that expert costs are warranted in this case because its engineering expert,

13  Dr. Bruce Bell, provided important litigation support.  Motion at 20-21.  For example, Plaintiff

14  argues that Dr. Bell's testimony was relevant in determining whether the SSOs reached surface

15  waters, which in turn established Defendant's liability under the CWA.  Motion at 21.  However, the

16  Court finds that Dr. Bell's testimony was not relevant to the 21 SSOs on which the Court granted

17  summary judgment to the plaintiffs, and was largely insufficient to establish liability as a matter of

18  law on other SSOs that the Court denied summary judgment on.  While the Court found that Dr.

19  Bell's testimony was admissible under *Daubert*, the Court also found that there were substantial

20  factual questions about the reliability of his conclusions and the completeness of his data and

21  reasoning.  Partial Summ. Judgment at 52.  Unlike the expert testimony in *Henry Bosma Dairy*, Dr.

22  Bell's testimony in the instant case had minimal impact on the Court's grant of partial summary

23  judgment.  Given the limited importance of Dr. Bell's testimony at this stage of the litigation, the

24  Court finds that the expert costs requested for Dr. Bell's work are not reasonable and will not award

25  any of Plaintiff's requested expert costs.  Again, Plaintiff is not foreclosed from recovering its expert

26  costs at a later stage.

27  ///

28  ///

C.      Litigation Expenses

Finally, Plaintiff seeks $4,788.79 in other litigation expenses, such as the costs to investigate and pursue this enforcement action. Motion at 22. The Ninth Circuit permits the recovery of out-of-pocket expenses that would normally be charged to a fee-paying client. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). These costs and expenses "are subject to a test of relevance and reasonableness in amount . . . . The judge must look at the practical and reasonable needs of the party in the context of the litigation." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995); *see also In re Immune Responses Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (awarding expenses for travel costs, filing fees, photocopies, messenger services, and computerized legal research). Here, Plaintiff seeks costs for mailings, photocopies, travel, and phone services. Such costs are practical and reasonably necessary to a party conducting litigation. The Court thus awards $4,788.79 in litigation expenses.

### III.   CONCLUSION

For the reasons stated above, the Court **PARTIALLY GRANTS** Plaintiff's motion for interim attorney's fees and litigation expenses, and awards 50% of Plaintiff's requested attorney's fees and all of Plaintiff's litigation expenses. The Court **DENIES** Plaintiff's motion for interim expert costs.

Defendant shall pay to Plaintiff $430,832.58 in interim attorney's fees and $4,788.79 in litigation expenses, for a total of $435,621.37.

This order disposes of Docket No. 139.


IT IS SO ORDERED.


Dated:  December 1, 2011

_____
EDWARD M. CHEN
United States District Judge